UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE BURKE and JILL MISKELLEY,
Co-Personal Representatives for the
Estate of DANIEL TROJANOWSKI, deceased,

       Plaintiff,

vs.

       Case No. 05-CV-71873
       HON. GEORGE CARAM STEEH

HURON VALLEY CENTER, et al.,

       Defendants.

_____/

ORDER ACCEPTING, IN PART, AND REJECTING, IN PART,
JULY 26, 2007 REPORT AND RECOMMENDATION (#58),
DENYING DEFENDANT NANNYONGA'S MOTION TO DISMISS (#44)
AND GRANTING DEFENDANT NANNYONGA'S MOTION
FOR SUMMARY JUDGMENT (#45), AND GRANTING DEFENDANTS WEEKS',
DILLON'S, VADLAMUNDI'S, CHUN'S, GENDERNALIK'S, COMBALECER'S, HILL'S,
WILLIAM'S, AND HVC'S MOTION TO DISMISS/SUMMARY JUDGMENT (#47)

Steve Burke and Jill Miskelley, co-personal representatives of the Estate of Daniel Trojanowski, filed a complaint on May 11, 2005 alleging 42 U.S.C. § 1983 claims against the Huron Valley Center (HVC) where Trojanowski was incarcerated, and against HVC Director Rosettus Weeks, Dr. Dillon, Dr. Seetha Vadlamundi, Dr. John Chun, Dr. Combalacer, Dr. David Gendernalik, R.N. Sandy Hill, R.N. Nannyonga, and L.P.N. Williams. The Estate alleges Trojanowski died on September 23, 1999 as the result of the defendants' deliberate indifference to Trojanowski's escalating respiratory problems. Defendant Nannyonga filed separate motions to dismiss and for summary judgment on October 13, 2006. The remaining defendants filed a joint motion to dismiss or for summary

judgment on October 16, 2006. The motions were referred to Magistrate Judge R. Steven Whalen, who issued a July 26, 2007 Report and Recommendation recommending that Nannyonga's motion for summary judgment be granted and her motion to dismiss be denied, and that the remaining defendants' motion for summary judgment be granted as to HVC, Weeks, Dillon, Chun, Combalacer, Gendernalik, Hill, and Williams, and denied as to Vadlamundi. The Estate filed timely objections as to the recommended granting of summary judgment in favor of Nurse Nannyonga. Dr. Vadlamundi filed timely objections to the recommended denial of her motion for summary judgment.

"A judge of the court shall make a de novo determination of those portions of a report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636 (b)(1)(C). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." Id.

## I. Estate's Objections

The Estate objects that Magistrate Judge Whalen erred by recommending Nurse Nannyonga's dismissal while, at the same time, recognizing that Nannyonga delayed in seeking emergency medical care knowing that Trojanowski was experiencing life-threatening conditions of shortness of breath, use of accessory muscles to breathe, and an asthma attack. The Estate argues that a question of fact remains for the jury to decide whether Nannyonga's delay and failure to report all of Trojanowski's symptoms to attending physician Dr. Chun constitutes actionable deliberate indifference.

On de novo review, and construing the record evidence in a light most favorable to the Estate, no reasonable jury conclude that Nurse Nannyonga was deliberately indifferent to Trojanowski's serious medical condition and need for corresponding medical care. See Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)); Matsushita Elec.

2

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Contrary to the Estate's argument, the record shows that Nurse Nannyonga was aggressive in actively attending to Trojanowski. Nannyonga arrived at HVC on September 23, 1999 at around 3:30 p.m., treated and monitored Trojanowski, paged the nearby clinic at around 4:20 p.m. for Dr. Chin and EMS personnel as Trojanowski's condition declined, placed Trojanowski on oxygen and transported him to the clinic by wheelchair at around 4:40 p.m., and continued monitoring Trojanowski and aiding Dr. Chin at the clinic until Trojanowski was transported by EMS to St. Joseph Hospital. Nannyonga August 28, 2006 Deposition Transcript, at 15-26; 34-43. Given the totality of the circumstances, Nannyonga's failure to report to Dr. Chin that Trojanowski was using his accessory muscles to breathe could not possibly be construed by a reasonable jury as resulting from Nurse Nannyonga's reckless disregard toward Trojanowski's medical condition. See Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001) (citing Farmer v. Brennan, 511 U.S. 825, 836 (1994)). To the extent Nannyonga's failure to fully communicate Trojanowski's condition to Dr. Chin constituted medical negligence or carelessness, such cannot support a requisite finding of deliberate indifference claim as a matter of law. Id. (citing Farmer, 511 U.S. at 835; Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The Estate's objections are without merit, and the court will accept that part of Magistrate Judge Whalen's Report and Recommendation recommending that summary judgement be granted in favor of defendant Nannyonga.

## II. Dr. Vadlamundi's Objections

Dr. Vadlamundi objects that the Magistrate Judge misconstrued her deposition testimony and a nurse's note as acknowledging that Trojanowski's vital signs were consistent with a "moderate" asthma attack warranting emergency treatment, and that Dr. Vadlamundi instead simply administered a nebulizer treatment and sent Trojanowski back to his unit. Dr. Vadlamundi continues that the Magistrate Judge also misconstrued as an

admission of deliberate indifference that she did not chart Trojanowski's pulse oxygen levels considering a nurse had charted the data. Dr. Vadlamundi further objects that it was error to conclude that a question of fact remains as to Trojanowski's cause of death given that the autopsy report shows that death was the result of suicide caused by a drug overdose taken at about 3:30 p.m. on September 23, 1999, a report that cannot be contradicted by psychiatrist Dr. Gendernalik's discharge summary listing an asthma attack as the cause of death. Dr. Vadlamundi further objects that the Magistrate Judge erred in interpreting Eggleston v. Bio-Medical Applications of Detroit, Inc., 468 Mich. 29, 658 N.W.2d 139 (2003) and M.C.L. § 600.5852 in concluding that the applicable statute of limitations period had not expired. In the alternative, Dr. Vadlamundi asks the court to certify the statute of limitations question to the Michigan Supreme Court for resolution. Estate filed an untimely "reply" to Dr. Vadlamundi's objections on September 11, 2007[1].

Upon de novo review of the record in a light most favorable to the Estate, no reasonable jury could conclude that Dr. Vadlamundi was deliberately indifferent to Trojanowski's serious medical condition. See Amway Distributors, 323 F.3d at 390; Matsushita Elec., 475 U.S. at 587. Dr. Vadlamundi's testified that a person suffering from a "mild" asthma attack could be treated at HVC, while a person suffering from a "moderate" or "severe" asthma attack would need emergency treatment. Vadlamundi September 14, 2006 Deposition Transcript, at 20. Dr. Vadlamundi described a "mild" asthma attack as evidenced by a history of asthma, shortness of breath, blood pressure and pulse readings within normal limits, and expiratory wheezes only, with appropriate medical care being an initial inhalation treatment with Albuterol or cortisone within the unit and, if unsuccessful,

---

[1] Estate's Response to Dr. Vadlamundi's August 9, 2007 Objections, mis-titled as a "Reply," was due 10 days after service of the Objections, or by August 27, 2007. See E.D. Mich. LR 72.1(d)(3).

a nebulizer treatment in the clinic. Id. at 21-23. Dr. Vadlamudi stated she could not authorize a nebulizer treatment from her home, but would be required to come into the HVC clinic and examine the patient first, then order a nebulizer treatment if the patient was experiencing an acute asthma attack. Id. at 27. Dr. Vadlamudi acknowledged that a pulse oxygen reading should be documented upon administering a nebulizer treatment. Id. at 28. In contrast, Dr. Vadlamudi described a "moderate" asthma attack as evidenced by a shortness of breath, no response to inhalation treatments, "expiratory as well as inspiratory wheezes," chest tightness, a high respiratory rate and a borderline pulse oxygen reading, with the patient suffering "real anxiety because of gasping like for breath." Id. at 29. Dr. Vadlamudi reiterated her opinion that a person suffering from a "moderate" asthma attack would need emergency room treatment unavailable at HVC. Id. at 29-30.

Testifying with respect to her treatment of Trojanowski, Dr. Vadlamudi consulted notes transcribed in Trojanowski's "Progress Notes," recognizing that, as of September 23, 1999, it was known that Trojanowski had a history of asthma. Id. at 40. Dr. Vadlamudi was called at her home late September 22, 1999 or in the very early hours of September 23, 1999, and advised by a nurse that Trojanowski was not responding to his Albuterol inhaler treatment. Id. at 46. Consistent with her previous testimony as to a proper response, Dr. Vadlamudi went to the clinic and examined Trojanowski. Id. Dr. Vadlamundi read from the note she recorded in Trojanowski's Progress Notes on September 23, 12:15 a.m.:

> Patient seen in the clinic this a.m., has shortness of breath, SOB, that's shortness of breath, cough, expiratory wheezes. For shortness of breath patient had Proventil inhaler times two with [little] relief. . . . .
>
> Alert, color is good. Vital signs, blood pressure 140/90, respiratory rate was 20, pulse rate was 96. HEENT, head, and ears and nose are clear, within normal limits; cardiovascular system, normal limits. Chest and lungs, expiratory wheezes, more on the right side present. That's positive. Acute asthma attack diagnosis.
>
> Plan, Albuterol treatment, unit dose given in the clinic. Tolerated

treatment given, patient tolerated well. Transferred to the unit.

Id. at 45-46. Dr. Vadlamundi explained that "unit dose" meant that Trojanowski had been administered a nebulizer treatment in the clinic. Id. at 46. Dr. Vadlamudi opined that Trojanowski's blood pressure, respiratory rate, and pulse rate were within normal limits, and that Trojanowski was not experiencing chest tightness. Id. at 48. Dr. Vadlamundi admitted she failed to document Trojanowski's pulse oxygen rate in the 12:15 a.m. report. Id. at 50. When asked her opinion of the degree of acute asthma attack Trojanowski was experiencing when Dr. Vadlamundi examined him, Dr. Vadlamundi testified: "Mild, and also responded well with the medication. I mean treatment." Id. at 50. Notwithstanding the failure to document Trojanowski's pulse oximetry rate, Dr. Vadlamundi's deposition testimony to this point could not possibly be construed as evidence of deliberate indifference; Dr. Vadlamundi responded to a nurse's request, came to the clinic, diagnosed Trojanowski as suffering from an acute but "mild" asthma attack, and administered medical care consistent with her prior testimony.

Both the Magistrate Judge and the Estate rely on a nurse's notes made in Trojanowski's "Progress Notes" at 1:30 a.m. on September 23, 1999, indicating the nurse's observations at around 11:20 p.m. on September 22, 1999 that lead her to call Dr. Vadlamundi. Vadlamundi September 14, 2006 Deposition Transcript, at 51-52. Dr. Vadlamundi could not specifically remember talking to the nurse about the information, but admitted that "in all likelihood" she and the nurse would have discussed the nurse's information before Dr. Vadlamundi treated Trojanowski. Id. at 54. Dr. Vadlamundi testified that the nurse noted that Trojanowski's pulse rate was 162/96, outside normal limits, and that Trojanowski was experiencing both inspiratory and expiratory wheezing. Id. at 55. Dr. Vadlamundi continued: "I found only expiratory wheezes. I didn't find any inspiratory wheezes." Id. at 55. Following more questioning, Dr. Vadlamundi explained: "I assessed

6

the patient after I came in. I felt that it's mild, not moderate." Id. at 58.

Construed in a light most favorable to the Estate, Dr. Vadlamundi's testimony relative to the nurse's notes does not support a conclusion that Dr. Vadlamundi was deliberately indifferent to Trojanowski's need for medical treatment. It is undisputed that Dr. Vadlamundi performed her own examination of Trojanowski after talking to the nurse, and found neither inspiratory wheezing nor an abnormal pulse rate indicative of a "moderate" asthma attack warranting emergency care. Dr. Vadlamundi's treatment of Trojanowski was consistent with her own diagnosis of a "mild" asthma attack, and Trojanowski was noted as responding well to the treatment as of 12:15 a.m. on September 23, 1999. It is worth noting that, at approximately 3:45 p.m. on September 23, 1999, more than 15 hours after Dr. Vadlamundi rendered non-emergency treatment to Trojanowski for a diagnosed "mild" asthma attack, Nurse Nannyonga observed Trojanowski standing outside the HVC unit smoking a cigarette in a break area. Nannyonga August 28, 2006 Deposition Transcript, at 82-87. Dr. Vadlamundi's failure to document Trojanowski's pulse oximetry rate could only be described on this record as negligence or carelessness, well short of actionable deliberate indifference. Comstock, 273 F.3d at 703 (citing Farmer, 511 U.S. at 835; Estelle, 429 U.S. at 106). Dr. Vadlamundi's objection to that part of the Report and Recommendation finding reasonable persons could conclude that she acted with actionable deliberate indifference is well taken, and the court will reject that part of the Magistrate Judge's recommendation that summary judgement be denied as to Dr. Vadlamundi. Dr. Vadlamundi is entitled to summary judgment as a matter of law. Amway Distributors, 323 F.3d at 390; Matsushita Elec., 475 U.S. at 587.

Based on the record evidence developed so far, the autopsy report identifying Trojanowski's cause of death as suicide could have been challenged at trial by Dr.

7

Gendernalik's finding that the cause of death was an asthma attack. Dr. Vadlamundi's argument that Dr. Gendernalik was not qualified to determine Trojanowski's cause of death because Dr. Gendernalik is a psychiatrist does not displace the fact that Dr. Gendernalik is a licensed medical doctor whose cause of death opinion has not yet been subjected to a full Daubert[2] examination. Absent record evidence, the objection to Dr. Gendernalik's medical qualifications is conclusionary, and not well taken. Clearly, autopsy results are generally more reliable, accurate, and comprehensive indicators for determining cause of death. However, Dr. Gendernalik's opinion cannot be disregarded absent a full analysis of the underlying information available including a potential evidentiary hearing. Of course, this ruling does not affect the court's decision that Dr. Vadlamundi is entitled to summary judgment as a matter of law on this record.

> M.C.L. § 600.5852 provides:
>
> If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run. But an action shall not be brought under this provision unless the personal representative commences it within 3 years after the period of limitations has run.

The Michigan Supreme Court in Eggleston found this language to be clear with "no further [] analysis necessary or allowed" and, quoting the stature, held that the action before it was timely because the successor personal representative had filed the complaint "within 2 years after letters of authority were issued" and "within 3 years after the period of limitations had run." Eggleston, 468 Mich. at 32-33.

The Estate's initial personal representative was appointed on March 26, 2001, and

---

[2] Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993).

filed an initial lawsuit on September 19, 2003. See Trojanowski v. Huron Valley Correctional Facility, No. 03-73607 (E.D. Mich. 2003) ("Trojanowski I"). The applicable statute of limitations period is three years. See Carroll v. Wilkerson, 782 F.2d 44 (6th Cir. 1986); M.C.L. § 600.5805(10) (3 year limitations period to recover for personal injury or death). The three year statute of limitations expired on September 24, 2002, three years after Trojanowski's death. The initial personal representative was required to file the Trojanowski I lawsuit within 3 years after this limitations period had run, by September 24, 2005, and within 2 years of being issued her letters of authority, by March 26, 2003. Eggleston, 468 Mich. at 32-33. Trojanowski I was filed on September 19, 2003, and was thus untimely. The parties stipulated to the dismissal of Trojanowski I on March 24, 2005 without prejudice.

The Estate's successor personal representatives, in the instant lawsuit, were appointed on April 7, 2005. They were likewise required to file this lawsuit within 3 years after the limitations period had run, by September 24, 2005, and within 2 years of being issued their letters of authority, by April 7, 2007. Eggleston, 468 Mich. at 32-33. This lawsuit was filed on May 11, 2005. Consistent with the Michigan Supreme Court's reasoning in Eggleston, the instant lawsuit was timely filed. The court declines Dr. Vadlamundi's request to conduct a further analysis of the statutory language and history of M.C.L. § 600.5852 given the Michigan Supreme Court's admonishment that such is neither necessary nor allowed. Eggleston, 468 Mich. at 32. Dr. Vadlamundi's objection arguing the Estate's claims were barred by the statute of limitations is not well taken.

Dr. Vadlamundi's "motion" to certify the question to the Michigan Supreme Court, contained within its objection, is not properly before the court as the issue was not before the Magistrate Judge. Further, certification of an unresolved issue to a state supreme court

lies within the federal court's discretion. Lehman Brothers v. Schein, 416 U.S. 386, 390-91 (1974). Certification is most appropriate if the state law question is new and unsettled. Transamerica Ins. Co. v. Duro Bag Mfg. Co., 50 F.3d 370, 372 (1995) (citing Lehman Brothers v. Schein, 416 U.S. at 390-91). Following the 2003 Eggleston decision, the statute of limitations issue now before the court is not new or unsettled. Dr. Vadlamundi's request for certification of the issue to the Michigan Supreme Court is not well taken.

### III. Conclusion

For the reasons set forth above, the Estates' objections are OVERRULED. Dr. Vadlamundi's objections to the Magistrate Judge's rulings that Trojanowski's cause of death remained in reasonable dispute, and that Estate's claims were not time barred, are OVERRULED. Dr. Vadlamundi's objection to the Magistrate Judge's ruling that a reasonable dispute remained whether Dr. Vadlamundi could be held liable under 42 U.S.C. § 1983 for deliberate indifference to Trojanowski's need for medical care is SUSTAINED. Accordingly, the court hereby ACCEPTS, IN PART, and DENIES, IN PART, the July 26, 2007 Report and Recommendation to the extent that defendant Nannyonga's motion for summary judgment is hereby GRANTED, defendant Nannyonga's motion to dismiss is hereby DENIED, and the remaining defendants' motion for summary judgment, including defendant Dr. Vadlamundi, is hereby GRANTED. Plaintiff Estate's claims are hereby DISMISSED with prejudice in their entirety.

SO ORDERED.

Dated: September 14, 2007

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 14, 2007, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk